Case 2:10-cv-02095-VBK   Document 16   Filed 02/01/11   Page 1 of 8   Page ID #:344

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| CATHERINE A. BORDBAR, | No. CV 10-02095-VBK |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | (Social Security Case) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") properly

        considered the testimony of the vocational expert; and

  2.   Whether the ALJ properly considered the significant erosion of the vocational base.

(JS at 4.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

## I

## THE ALJ DID NOT ERR AT STEP FIVE OF THE SEQUENTIAL EVALUATION PROCESS IN DETERMINING THAT PLAINTIFF COULD PERFORM IDENTIFIED JOBS

**A.   Introduction.**

After having her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") denied administratively, Plaintiff Catherine Ann Bordbar ("Plaintiff") proceeded to a hearing before an ALJ on July 15, 2009. (AR 24-53.) At that hearing, testimony was taken from a vocational expert ("VE"). Thereafter, the ALJ issued an unfavorable decision (AR 14-23), the Appeals Council denied review (AR 7-9), and this lawsuit followed.

The ALJ utilized the well-known five-step sequential evaluation process. 20 C.F.R. §404.1520; §416.920. Based on a determination of Plaintiff's residual functional capacity ("RFC") which, in pertinent part, limited Plaintiff to "1-2 step instruction jobs with no production quotas and only occasional contact with supervisors, coworkers and the public" (AR 18), the ALJ agreed with the testimony of the VE at Step Five that Plaintiff could perform the representative

occupations of mail sorter (Dictionary of Occupational Titles ["DOT"] 209.687-026), laundry sorter (DOT 361.687-014), and thread cutter (DOT 789.684-050). (AR 22.) It is Plaintiff's disagreement with this Step Five conclusion that constitutes the basis for her first issue. Specifically, Plaintiff asserts that the Reasoning Level required for these jobs pursuant to the DOT exceeds the Reasoning Level assessed by the ALJ.

The DOT, at Appendix C III, sets out a tripartite concept called "General Educational Development ("GED")." GED "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. One of the divisions of the GED scale is denominated "Reasoning Development." Within this scale are six levels of reasoning development. As pertinent to this decision, Level One requires the ability to "apply common sense understanding to carry out simple one or two-step instructions." Reasoning Level Two requires the ability to "apply common sense understanding to carry out detailed but uninvolved written or oral instructions." Reasoning Level Three requires that the individual "apply common sense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations."

Plaintiff reasons that in formulating an RFC which limits her to "1-2 step instruction jobs with no production quotas and only occasional contact with supervisors, coworkers and the public," the ALJ was assessing that Plaintiff has a maximum reasoning level of 1, which, as noted, requires the ability to "apply common sense understanding to carry out simple one or two-step instructions."

**B.  Analysis**.

Plaintiff received a complete psychiatric evaluation ("CE") at the request of the Department of Social Services on March 31, 2007, from Dr. Simonian (AR 218-223).  Dr. Simonian assessed, in relevant part, that Plaintiff is able to understand, remember and carry out simple one or two-step job instructions, and is also able to complete detailed and complex instructions. (AR 222.) The State Agency medical consultant, on May 9, 2007, completed a Psychiatric Review Technique Form, which indicates that Plaintiff would have no limitations in performing activities of daily living and in her ability to maintain concentration, persistence or pace; no episodes of decompensation of extended duration, but would have moderate limitations in her ability to maintain social functioning. (AR 224-34.)  Also, on the same day, the State Agency medical consultant completed a "Mental Residual Functional Capacity" assessment, and assessed moderate limitations in the following areas: ability to work in coordination with others without being distracted, interact appropriately with the public, accept instructions and respond appropriately to criticism, and get along with coworkers.  Otherwise, no significant limitations were assessed.  The consultant concluded that Plaintiff could perform substantial gainful activity with limited contact with others. (AR 235-37.)

Significantly, the ALJ found that although Plaintiff had not received any recent treatment for depression, "the opinions of the [psychiatric] consultative examiner and the State Agency medical consultant are reasonable." (AR 21.)  Based on her agreement with these assessments, the ALJ adopted the RFC, including the mental component, previously noted in this decision.

1      Plaintiff's past relevant work ("PRW") was as a data entry clerk
2 and telephone operator. These are identified as SVP 3-4 level (semi-
3 skilled) with a Reasoning Level of 3. (AR 48-50, 117-123, 128-136,
4 140.) As noted, a Reasoning Level of 3 requires the ability to "apply
5 common sense understanding to carry out instructions furnished in
6 written, oral, or diagrammatic form. Deal with problems involving
7 several concrete variables in or from standardized situations."
8 Plaintiff claims that the ALJ assessed an RFC which limited her to
9 Reasoning Level 1 types of jobs. Effectively, Plaintiff equates the
10 RFC of "1-2 step simple instruction kinds of jobs with no production
11 quotas" with the language of Reasoning Level 1 which requires the
12 ability to "apply common sense understanding to carry out simple one
13 or two-step instructions." The matter is not resolvable, however, by
14 comparing the literal words used in the descriptions in the DOT with
15 the words utilized by the ALJ in assessing Plaintiff's RFC. Plaintiff
16 concedes that word similarity is not the determinative factor, citing
17 Meissl v. Barnhart, 403 F.Supp.2d 981, 984-85 (C.D. Cal. 2005).
18 There, the Court determined that where plaintiff was found capable of
19 performing simple tasks at a routine pace, there was no error at Step
20 Five in identifying a job which required a Reasoning Level of 2. Then
21 Magistrate Judge Larson rejected Plaintiff's contention that the ALJ
22 had erred in identifying at Step Five a Reasoning Level 2 job because
23 that reasoning level uses the word "detailed." The Court noted that
24 Reasoning Level 2, while utilizing the word "detailed," also modifies
25 this by the word "uninvolved." Thus, the Court rejected an analysis
26 which would compare the two scales "based on the serendipity that they
27 happen to employ the same word choice, ..." (Id. at 984.) The Court
28 observed that Reasoning Level 1 "appl[ies] to the most elementary of

5

occupations; only the slightest bit of rote reasoning being required." (Id.) Such jobs were identified in Meissl as, for example, counting cows as they come off a truck; pasting labels on filled whiskey bottles; and tapping the lid of cans with a stick. As the Court observed, "someone able to perform simple, repetitive instructions indicates a level of reasoning sophistication above those listed." (Id.) The Court noted that this conclusion was consistent with the holding of other Courts, citing Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) which reached a similar conclusion. (Id.)

Other Courts in the Central District have issued opinions consistent with Meissl. For example, in Harris v. Astrue, 2010 WL 1641341 (C.D. Cal. 2010), Magistrate Judge Segal concluded, "Plaintiff's limitations to simple repetitive work are consistent with a reasoning level of 2." (Id. at *13.) Similarly, in Wortman v. Astrue, 2010 WL 2652278 (C.D. Cal. 2010, the Court determined that an RFC which allowed the individual to "understand and carry out simple instructions, avoid ordinary hazards, and sustain concentration and attention for simple repetitive tasks, but not complex tasks" was not incompatible with jobs identified at Step Five which required Level 2 reasoning.

The ALJ's decision did not identify a particular Reasoning Level as being within Plaintiff's ability. The Court must therefore make reasonable inferences from the ALJ's decision. See Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989). Here, as noted, Plaintiff's past relevant work required Reasoning Level 3, while the identified jobs at Step Five only require Reasoning Level 2. Although the ALJ determined that Plaintiff has a depressive disorder as part of her severe impairments, there is no indication in the record that she has

6

organic impairments or cognitive deficits. (AR 38-39, 187, 191, 194, 218-223.)  Indeed, the psychiatric CE concluded that she was able to perform detailed and complex instructions. (AR 222.)  Her intelligence and mental functioning is in the average range. (AR 20-21, 220-221.) Other than having moderate limitations in certain areas related to social functioning, Plaintiff has no limitations in her activities of daily living, and in maintaining concentration, persistence and pace. Consequently, it would not be a fair inference from the record that the ALJ intended to assess Plaintiff as having a maximum Reasoning Level of 1.  For all of these reasons, the Court concludes that the ALJ did not err at Step Five of the sequential evaluation process.

The Court need not address Plaintiff's discussion concerning the applicability of the Medical-Vocational Guidelines ("Grids") to the one sedentary occupation identified by the VE at the hearing, as the ALJ did not rely upon identification of that occupation in her Step Five conclusion.

As to Plaintiff's second issue, the Court determines that the ALJ properly considered the testimony of the VE at Step Five of the sequential evaluation process.  Contrary to Plaintiff's contention, her exertional limitations do not fall between two Grid Levels.  Only because of her non-exertional limitations could she not perform a full range of light work (AR 18), and the ALJ did consider the Grids and the two Grid Rules which apply to differing age groups for individuals performing light work. (AR 22-23.)  It was due to the non-exertional limitations that the ALJ took the testimony of the VE. (AR 48-53.) Plaintiff's assertion of a production quota or limited public contact are both non-exertional limitations which are not contemplated by the Grids, therefore making a VE necessary.  The VE did identify several

jobs within the light exertional framework that Plaintiff could perform which were consistent with her non-exertional limitations. The case of Moore v. Apfel, 216 F.3d 864 (9th Cir. 2000) is not applicable to Plaintiff's case. For this reason, the Court finds no error with regard to the second issue identified by Plaintiff.

The decision of the ALJ will be affirmed. The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**


DATED: February 1, 2011                    /s/
                                    VICTOR B. KENTON
                                    UNITED STATES MAGISTRATE JUDGE